# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**INTERNET SOLUTIONS CORPORATION,**

            **Plaintiff,**

**-vs-**                                              **Case No. 6:07-cv-1740-Orl-22KRS**

**TABATHA MARSHALL,**

            **Defendant.**

_____

## ORDER

This cause comes before the Court for consideration of Defendant Tabatha Marshall's (hereinafter "Marshall") Motion to Dismiss for Lack of Jurisdiction, filed on November 20, 2007. (Doc. No. 4.) Plaintiff Internet Solutions Corporation (hereinafter "ISC") responded in opposition to Defendant's Motion on November 30, 2007. (Doc. No. 12.)

### I. Introduction

ISC filed its Complaint against Marshall on November 1, 2007 for defamation, trade libel, and injurious falsehood. (Doc. No. 1.) On November 20, 2007, Marshall filed a Motion to Dismiss for lack of subject matter and personal jurisdiction. (Doc. No. 4.) In its first Order on Marshall's Motion to Dismiss, the Court found that subject matter jurisdiction existed based on diversity of citizenship, *see* 28 U.S.C. § 1332, but the Court determined that it did not have personal jurisdiction over Marshall. (Doc. No. 27.)

After conducting the two-part test for personal jurisdiction over a nonresident defendant, the Court found that although jurisdiction would be appropriate pursuant to Florida's long-arm statute, Marshall lacked sufficient minimum contacts with Florida to satisfy the Due Process Clause of the U.S. Constitution. (Doc. No. 27.) ISC appealed, and the Court of Appeals for the Eleventh Circuit certified to the Florida Supreme Court a question regarding interpretation of the long-arm statute. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1296-97 (11th Cir. 2009) ("*Internet Solutions I*"). The Florida Supreme Court concluded that Marshall's posting of allegedly defamatory material about ISC that was accessible in Florida and accessed in Florida subjected her to personal jurisdiction pursuant to the Florida long-arm statute. *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214-15 (Fla. 2010) ("*Internet Solutions II*"). Based on that opinion, the Eleventh Circuit held that long-arm jurisdiction over Marshall was appropriate, reversed this Court's dismissal, and remanded for further proceedings. *See Internet Solutions Corp. v. Marshall*, 611 F.3d 1368, 1370-71 (11th Cir. 2010) ("*Internet Solutions III*").

## II.  Background

Marshall is a private individual who resides in the State of Washington. Marshall Declaration (Doc. No. 5 at 1.) She owns and operates a website, http://tabathamarshall.com, on which she posts information about consumer-related issues regarding different companies. (*Internet Solutions III*, 611 F.3d at 1369). Marshall does not sell products or services on the website, place advertisements on the website, or receive income in connection with the website. (Doc. No. 5 at 2.) Marshall declares that she has not sent any business-related communications, telephonic or written, related to the website into Florida.

(Doc. No. 5 at 2.) Additionally, she has not provided a capability on the website that allows visitors to identify or target Florida companies or individuals discussed on the website. (Doc. No. 5 at 2.) However, the website does allow visitors to post comments on the articles posted by Marshall, and for Marshall to respond to the comments.

ISC is a Nevada for-profit corporation with its principal place of business in Orlando, Florida. (Doc. No. 1 at 1.) ISC owns and operates several websites related to employment recruiting and internet advertising, including VeriResume. (Doc. No. 1 at 1-2.) ISC alleges that Marshall posted defamatory statements on her website to the effect that ISC engaged in criminal activity, such as "phishing" and consumer fraud scams, in order to steal personal information from customers for purposes of identity theft. (Doc. No. 1 at 2-3.)

Specifically, ISC refers to an article on the website written by Marshall entitled "Something's VeriRotten with VeriResume . . . . " This article identified VeriResume as an affiliate of ISC and listed three Florida addresses associated with ISC. (Doc. No. 1, Ex. A.) Of the viewers who commented on the VeriResume post, several appeared to have Florida addresses ("Mrs. C near Orlando, FL," "Suzanne C–Orlando, FL," and "anonymous–Orlando, FL"). (Doc. No. 1, Ex. A.)

### III. Analysis of Personal Jurisdiction

A two-part analysis governs a court's determination of personal jurisdiction over a nonresident defendant. The court first considers whether the exercise of jurisdiction is appropriate under the state long-arm statute. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th


Cir. 1996)).[1] If the court determines that jurisdiction under the long-arm statute is warranted, then it examines whether the exercise of jurisdiction over the defendant comports with due process, by ensuring that the defendant has sufficient minimum contacts with the forum state and that jurisdiction does not offend "traditional notions of fair play and substantial justice." *Sloss*, 488 F.3d at 925 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction by '[p]resent[ing] enough evidence to withstand a motion for directed verdict.'" *Goforit Entm't LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1328 (M.D. Fla. 2007) (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006)). "If 'the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'" *Goforit*, 513 F. Supp. 2d at 1328 (quoting *Stubbs,* 447 F.3d at 1357).

In its previous Order on Defendant's Motion to Dismiss (Doc. No. 27), this Court

---

[1] The Court will not re-examine long-arm jurisdiction. The Eleventh Circuit certified a question to the Florida Supreme Court addressing long-arm jurisdiction in the context of Marshall's website–specifically whether Marshall committed a tortious act as provided by section 48.193(1)(b) of the statute. *Internet Solutions I*, 557 F.3d at 1296-97. The Florida Supreme Court answered the question affirmatively, *Internet Solutions II*, 39 So. 3d at 1203, and the Eleventh Circuit held that Marshall was subject to the Florida long-arm statute. *Internet Solutions III,* 611 F.3d at 1370. Thus, by posting allegedly defamatory material that was accessible in Florida, Marshall committed a tortious act within Florida "provided that the material was accessed–and thus published–in Florida." *Internet Solutions II*, 39 So. 3d at 1215.

found that ISC met its initial burden of pleading a prima facie case of personal jurisdiction by presenting sufficient allegations that Marshall's contact with Florida satisfied due process. The burden of controverting those allegations shifted to Marshall, and Marshall submitted a Declaration (Doc. No. 5) that adequately rebutted ISC's minimum contacts allegations. (Doc. No. 27.) Instead of conclusory assertions, Marshall's affidavit contained specific statements explaining why Marshall did not have the requisite "minimum contacts" with Florida, including the following: that Marshall has never done business in Florida; that Marshall has never received income in connection with the website; that Marshall has never solicited advertising or business in Florida in connection with the website; and that the website did not have the capability to distinguish or target Florida individuals or companies. (Doc. No. 5 at 2.)

Marshall's affidavit shifted the burden to ISC to produce evidence supporting personal jurisdiction. However, instead of submitting evidence, ISC responded by arguing that the statements in Marshall's declaration were conclusory. (Doc. No. 12 at 10.) Without supporting evidence, ISC failed to satisfy its burden of establishing sufficient minimum contacts. These deficiencies remain. However, the Eleventh Circuit advised the Court of several points to consider in the due process analysis, which were raised by the Florida Supreme Court in its discussion of long-arm jurisdiction. "As the Florida Supreme Court observed, 'the issues of whether Marshall targeted a Florida resident, . . . purposefully directed her post at Florida, or whether her website is 'active' or 'passive' could be properly considered' in the 'more restrictive' second step determination of whether 'the exercise of jurisdiction over the nonresident defendant would violate due process.'" *Internet Solutions*

-5-

*III*, 611 F.3d at 1371 n.1.  The Court will consider these factors in light of the broader due process questions of minimum contacts and "traditional notions of fair play and substantial justice."

### A.  Minimum Contacts

For minimum contacts with the forum to be sufficient, the contacts must satisfy three criteria:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it.  Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws.  Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there.

*SEC v. Carillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (citations omitted).  Additionally, "the minimum contacts must be 'purposeful' contacts." *Goforit*, 513 F. Supp. 2d at 1329 (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994)).  Although posting information on a website is fundamentally different from directing a phone call, email or letter into a forum, "[t]he Internet does not provide cause to abandon traditional principles guiding the personal jurisdiction analysis." *Goforit*, 513 F. Supp. 2d at 1329 (citations omitted).  However, courts have adapted the minimum contacts analysis to address the unique nature of Internet activity.

### 1.  Passive v. Active Website

The constitutionality of basing personal jurisdiction on Internet activity has been analyzed in light of the interaction between the host and the user and the commercial nature of the Web site:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet . . . At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Miller v. Berman*, 289 F. Supp. 2d 1327, 1335 (M.D. Fla. 2003) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). A passive website allows users to view information on the website, while an active web site allows users to view the website and enter into contracts over the Internet with the host. *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1329 (S.D. Fla. 2001) (citations omitted). In the middle ground, one type of interactive exchange between the user and the host computer is the user's ability to post information and view posts of other users on an online bulletin board. *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002).

Applying this standard to the case before the Court, the only interaction between the user and Marshall's website is the user's ability to post comments to Marshall's articles, to which Marshall can then post a response. Thus, the website at most could be described as an interactive site in the middle of the spectrum.

Turning the analysis to the commercial nature of the website, the Court notes that the Eleventh Circuit has already determined that there was no commercial activity associated with the website. *Internet Solutions I*, 557 F.3d at 1297

(describing the website as "non-commercial" when certifying the long-arm question to the Florida Supreme Court). Even though ISC alleges that Marshall posted the allegedly defamatory statements to lure advertisers to the site to obtain income (Doc. No. 1 at 4), Marshall responds in her Declaration that she has neither received income nor solicited advertising in connection with the website. (Doc. No. 5 at 2.) ISC does not produce evidence in support of its allegation, and therefore the Court considers this allegation speculative. (Doc. No. 12 at 9.) *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted) ("The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits."). Even assuming that Marshall attempted to lure advertisers to her website by way of the defamatory statements, this commercial activity by itself likely would not be sufficient. Thus, the exercise of personal jurisdiction based on the *Zippo* sliding scale is not proper.

### 2. Purposeful Direction of the Post at Florida

When applying the purposeful direction standard to Internet activity, the court recognizes that "the fact that Defendant's websites are equally accessible everywhere does not establish targeting of Florida . . . [V]isits to a website by Florida residents would not, without more, constitute sufficient minimum contacts." *Goforit*, 513 F. Supp. 2d at 1330. However, conduct intended to cause harm in a forum state, or "expressly aimed" at the forum state, can satisfy minimum contacts with the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984). Further, the "effects" or "brunt of the harm" caused by the intentional tort must be suffered in the

forum. *Licciardello*, 544 F.3d 1280, 1285-88 (11th Cir. 2008) (citing *Calder*, 465 U.S. at 791). Even a single act that creates a "substantial connection" with the forum can establish personal jurisdiction. *Licciardello*, 544 F.3d at 1285 (internal citations omitted). For example, in the limited context of trademark infringement on Internet, the Eleventh Circuit has held that "[i]ntentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Id.* (citing *Calder*, 465 U.S. at 790).[2]

In a defamation action in which an allegedly defamatory article was posted on an online bulletin board, the Fifth Circuit held that the *Calder* effects test was not met because the article did not target readers in the forum state and the forum state was not the "focal point of the article or harm suffered." *Revell*, 317 F.3d at 473.[3] On a website maintained by Columbia University, the defendant posted an article which accused the plaintiff, then Associate Deputy Director of the FBI, of having advanced knowledge of the terrorist bombing of Pan Am Flight 103 and willfully

---

[2] In expressly limiting its holding, the Eleventh Circuit stated that "[w]e do not, by our decision today, intend to establish any general rule for personal jurisdiction in the internet context. Our holding, as always, is limited to the facts before us. We hold only that where the internet is used as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness, and that use is aimed at the victim's state of residence, the victim may hale the infringer into that state to obtain redress for the injury." *Licciardello*, 544 F.3d at 1288 n.8.

[3] In an unreported opinion, a court in the Middle District of Florida adopted this reasoning of *Revell* and noted that another court in the Eleventh Circuit did as well, in *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1367-68 (S.D. Fla. 1999). *See Full Sail, Inc. v. Spevack*, No. 6:03-cv-887-31JGG, 2003 WL 25277185, at *6 (M.D. Fla. Oct. 21, 2003) ("This [c]ourt agrees with *Revell* and *JB Oxford Holdings* to the extent that a site satisfies the *Calder* effects test only if the site targets the readers of the forum state.").

failing to stop it. *Id.* at 469. The court held that based on the *Calder* effects test, the article alone did not warrant personal jurisdiction in Texas, where plaintiff resided, in part because the article was not particularly directed at Texas readers and contained no references to Texas. *Id.* at 473. Although the defendant did not know that the plaintiff was a resident of Texas, he "must have known that the harm of the article would hit home wherever Revell resided. But that is the case with virtually any defamation. A more direct aim is required than we have here." *Id.* at 476. The court also noted that "[d]emanding knowledge of a particular forum to which conduct is directed, in defamation cases, is not altogether distinct from the requirement that the forum be the focal point of the tortious activity because satisfaction of the latter will ofttimes provide sufficient evidence of the former." *Id.* at 475-76. However, as in other intentional tort cases, "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." *Id.* at 473.

The case before the Court is distinguishable from *Revell* because Marshall included in her post three Florida addressees associated with ISC, where ISC alleges it maintains its principal place of business. (Doc. No. 1 at 1.) However, it is significant that ISC operates an online recruiting business (referred to in its Complaint as "various website businesses relating to employment recruiting"). (Doc. No. 1 at 2.) Although ISC maintains offices in Florida, residents of any state are equally capable of utilizing ISC's recruiting services through the Internet. Thus, an allegedly defamatory article about ISC hypothetically would target a national

-10-

audience. *Full Sail*, 2003 WL 25277185 at *6 ("Although it is true that the brunt of any injury caused by Spevack/Zero One's intentional acts necessarily is felt only in Florida, for that is where Full Sail is located, the targeted audience presumably exists throughout the entire United States . . . [p]laintiff has not shown that the site is expressly aimed at a Florida audience and fails to satisfy the *Calder* effects test.").

Aside from the addresses, the article contains no other connection to Florida. ISC does not demonstrate that Florida residents were the target audience or that it suffered a particular harm to its business generated from Florida. Even though Florida residents may have posted in response to the article, personal jurisdiction cannot be based solely on the ability of a Florida resident to access the website. *Goforit*, 513 F. Supp. 2d at 1330. The court must distinguish between Internet contacts that target readers in a particular forum from contacts that "merely link with equal strength the defendant to all states." *JB Oxford Holdings*, 76 F. Supp. 2d at 1367. Purposeful direction under *Calder*, as interpreted by the Fifth Circuit, has not been established.

Additionally, courts have found purposeful direction at the forum when a website allows the viewer to tailor their search of the website to a specific state. *Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 347 F. Supp. 2d 1242, 1246 (M.D. Fla. 2004). In *Whitney*, the nonresident defendants maintained a website on which they published consumer complaints, including more than a dozen false stories about the plaintiff, while also soliciting donations from consumers and advertising items for sale. 347 F. Supp. 2d at 1243-44. The website allowed

consumers to "Pick any state!" for articles posted about companies in that state and promised to contact individual consumers with information about lawsuits. *Id.* at 1244. The court concluded that the defendants' activities were purposefully directed at Florida, in part because viewers could tailor their search to Florida companies. *Id.* at 1246. According to the court, the defamatory comments posted by defendants "targeted a Florida resident and a Florida corporation, and concerned a Florida community. The website also solicited a rebuttal from the Florida plaintiffs." Thus, minimum contacts were satisfied. *Id.*

Compared to the website in *Whitney*, Marshall's article does not rise to the level of purposeful direction. Most importantly, the parties do not allege that Marshall's website provides the capability to search the website for Florida-specific companies, or even that Marshall discusses another Florida company besides ISC. Although Marshall posted Florida addresses associated with ISC, it is not alleged that readers were drawn to the article because of ISC's connection with Florida. Ultimately, Marshall's contacts with Florida do not indicate that she purposefully availed herself of the privilege of conducting activities in Florida or should reasonably anticipate being haled into a Florida court.

### B. Fair Play and Substantial Justice

Even if ISC had established minimum contacts, the exercise of jurisdiction over Marshall would offend traditional notions of fair play and substantial justice. The court considers five factors to make this determination: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's

interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The burden on Marshall, who resides in Washington, weighs against exercising jurisdiction. As Marshall states in her Declaration, the fact that the website is hosted out of her home in Washington suggests that relevant documents and evidence are also located in Washington. (Doc. No. 5 at 2.) Although ISC maintains its principal place of business in Florida and is authorized to transact business in Florida, the Court cannot discern any other particular interest Florida has in resolving the dispute. *Goforit*, 513 F. Supp. 2d at 1333 (finding that the claim of a Nevada corporation operating a website service available nationally, with its principal place of business in Florida, did not result in Florida having a concern in the dispute). Because the three other factors do not weigh for or against jurisdiction in this forum, fair play and substantial justice would not be satisfied by litigation of the suit in Florida.

## IV. Conclusion

For the foregoing reasons, personal jurisdiction over the nonresident defendant in this Court would be improper because the defendant failed to establish a prima facie case of personal jurisdiction. Furthermore, there are not sufficient minimum contacts to satisfy the principles of the Due Process Clause, and an exercise of personal jurisdiction over the defendant would offend traditional notions of fair play and substantial justice.

Accordingly, it is ORDERED as follows:

1. Defendant's Motion to Dismiss Complaint for Lack of Jurisdiction filed on November 20, 2007 (Doc. No. 4) is GRANTED.

2. This case is DISMISSED for lack of personal jurisdiction.

3. The Clerk shall close the case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on September 29, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Party

ANNE C. CONWAY
United States District Judge